UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

PAUL A. GREEN,

          Plaintiff,

v.                                                      Case No. 6:16-cv-1298-Orl-37KRS

SPECIALIZED LOAN SERVICING
LLC,

          Defendant.

## ORDER

This action is before the Court on the following matters: (1) Defendant Specialized Loan Servicing, LLC's Motion to Dismiss Amended Complaint (Doc. 28); (2) Plaintiffs' Response to Defendant Specialized Loan Servicing's Motion to Dismiss Amended Complaint (Doc. 35); (3) Defendant Specialized Loan Servicing, LLC's Reply to Plaintiff's Response to Defendant's Motion to Dismiss Amended Complaint (Doc. 38); and (4) Defendant, Specialized Loan Servicing, LLC's Notice of Supplemental Authority in Support of Defendant's Motion to Dismiss Amended Complaint (Doc. 39).

### I.    BACKGROUND

Paul A. Green ("**Green**") is a borrower under an Adjustable Rate Note dated **September 18, 2006** (Doc. 20-1, pp. 6–9 ("**Note**")), and is a mortgagor under a related security interest (*id*. at 11–21 ("**Mortgage**")). (*See* Doc. 21, ¶¶4–6.) As the servicer of the Mortgage, Specialized Loan Servicing, LLC ("**SLS**") allegedly has acted as a debt collector for purposes of the Fair Debt Collections Practices Act ("**FDCPA**"). (*See id*.)

Green initiated this FDCPA action against SLS by filing his initial Complaint in the Circuit Court of the Eighteenth Judicial Circuit in and for Brevard County, Florida ("**State Court**"), and SLS filed a timely notice of removal on July 20, 2016. (Docs. 1, 2.) Pending resolution of a foreclosure case against Green—*Deutsche Bank v. Green*, No. 05-2015-CA-32851 ("**FC Case**")—the Court stayed this action from August 9, 2016 until February 14, 2017. (*See* Docs. 14, 18.) After the stay, SLS moved to dismiss Green's initial Complaint (Doc. 20), and Green responded by filing the Amended Complaint (Doc. 21).

In his Amended Complaint, Green claims that SLS violated the FDCPA by attempting to collect sums under the Note and Mortgage that are barred under Florida's five-year statute of limitations ("**Fla. SOL**"). (*See id.* ¶¶7, 12, 15–17, 32.) SLS's allegedly improper collection efforts are reflected in three documents filed as exhibits to the Amended Complaint ("**Communications**"): (1) a "Notice of Default" dated **April 8, 2015** ("**2015 Notice**"); (2) a complaint dated **June 30, 2015** ("**FC Complaint**"), which was filed in the FC Case; and (3) a "**Mortgage Statement**" dated January 18, 2017 ("**2017 Statement**"). (*See* Doc. 21, ¶¶22–27 (alleging that the Mortgage Statements violated §1692f, §1692e(2)(a), and §1692e(10)); *see also* Doc. 20-1.) According to the Amended Complaint, these Communications "would easily confuse the least sophisticated consumer." (*See* Doc. 21, ¶36.)

In its motion to dismiss (Doc. 28 ("**MTD**")), SLS argues that Green's "allegations fail as a matter of law," and the Court should dismiss the Amended Complaint with prejudice "and without leave to amend as amendment would be futile" because: (1) any

claim based on the 2015 Notice is untimely (*see* Doc. 28, pp. 6–7); (2) the 2017 Statement "did not constitute 'debt collection'" (*see id*. at 10–12); (3) the FDCPA does not provide "an affirmative cause of action" based on an affirmative defense like the Fla. SOL (*see id*. at 7–8); (4) the sums SLS sought to collect are not barred by the Fla. SOL; and (5) Green failed to comply with the pre-suit notice requirement set forth in the Mortgage (*id*. at 13). After Green responded to the MTD (Doc. 35), SLS replied (Doc. 38) and filed a notice of supplemental authority (Doc. 39).

Based on *Garrison v. Caliber Home Loans, Inc.*, 233 F. Supp. 3d 1282, 1293–94 (M.D. Fla. 2017), the Court agrees with SLS that Green's claims fail as a matter of law because the Fla. SOL is a matter to be raised as a defense in a foreclosure case—not as an affirmative claim under an FDCPA claim related to a mortgage.[1] As explained below, the SLS's remaining arguments are similarly meritorious. Thus, the Amended Complaint is due to be dismissed with prejudice.

## II. LEGAL STANDARDS

### A. Pleading Requirements

Under the minimum pleading requirements of the Federal Rules of Civil Procedure, plaintiffs must provide short and plain statements of their claims with simple and direct allegations set out in numbered paragraphs and distinct counts. *See* Fed. R. Civ. P. 8(a), 8(d), & 10(b). If a complaint does not comport with these minimum pleading

---

[1] Green raised the Fla. SOL issue as an affirmative defense in the FC Case, but the matter was not squarely addressed before the FC Case was involuntarily dismissed "based upon the date of default alleged" in the FC Complaint—"not the amounts sought." (*See* Doc. 28, p. 3; Docs. 20-3, 20-4.)

requirements, if it is plainly barred, or if it otherwise fails to set forth a plausible claim, then it is subject to dismissal under Rule 12(b)(6). *See Ashcroft v. Iqbal*, 556 U.S. 662, 672, 678–79 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Plausible claims must be founded on sufficient "factual content" to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 679; *see also Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1296–97 (11th Cir. 2015) (affirming dismissal of implausible FDCPA claim). In assessing the sufficiency of factual content and the plausibility of a claim, courts draw on their "judicial experience and common sense" in considering: (1) the exhibits attached to the complaint; (2) matters that are subject to judicial notice; and (3) documents that are undisputed and central to a plaintiff's claim. *See Iqbal*, 556 U.S. at 679; *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1215–16 (11th Cir. 2012); *Parham v. Seattle Serv. Bureau, Inc.*, 224 F. Supp. 3d 1268, 1271 (M.D. Fla. 2016). Courts do not consider other matters outside the four corners of the complaint, and they must: (1) disregard conclusory allegations, bald legal assertions, and formulaic recitation of the elements of a claim; (2) accept the truth of well-pled factual allegations; and (3) view well-pled facts in the light most favorable to the plaintiff. *See Hayes v. U.S. Bank Nat'l Ass'n*, 648 F. App'x 883, 887 (11th Cir. 2016);[2] *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

---

[2] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007)

## B. The FDCPA

"In order to protect consumers, Congress enacted the FDCPA 'to eliminate abusive debt collection practices by debt collectors.'" *Hart v. Credit Control, LLC*, 871 F.3d 1255, 1257 (11th Cir. 2017) (quoting 15 U.S.C. § 1692a)). To that end, the FDCPA "authorizes private lawsuits and weighty fines." *See Henson v. Santander Consumer USA, Inc.*, 137 S. Ct. 1718, 1720 (2017). For instance:

> [A]ny debt collector who fails to comply with any provision [of the FDCPA] with respect to any person is liable to such person in an amount equal to the sum of—
>
> (1) any actual damage sustained by such person as a result of such failure;
>
> (2) . . . additional damages as the court may allow, but not exceeding $1,000; . . . and
>
> (3) . . . the costs of the action, together with a reasonable attorney's fee as determined by the court.

15 U.S.C. § 1692k(a). Consumers must bring their FDCPA claims "within one year from the date on which the" alleged FDCPA violation occurred. 15 U.S.C. § 1692k(e); *see Moskovits v. Aldridge Pite, LLP*, 677 F. App'x 510, 519 (11th Cir. 2017). When it is apparent from the face of the Complaint that more than a year has passed since an alleged violation, then a debt collector may raise this one-year statute of limitations ("**FDCPA SOL**") defense in a motion to dismiss.[3] *See Hampton-Muhamed v. James B. Nutter & Co.*,

---

[3] Debt collectors also may defend a FDCPA claim by showing that: (1) the "violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error" (*see Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011) (noting that the "bona fide error" defense is an exception to the "general rule of strict liability" for FDCPA violations); or (2) the

687 F. App'x 890, 893 (11th Cir. 2017); *Rivas v. The Bank of N.Y. Mellon*, 676 F. App'x 926, 929–30 (11th Cir. 2017).

The FDCPA broadly proscribes the use of: (1) a "false, deceptive, or misleading representation or means in connection with the collection of any debt" (15 U.S.C. § 1692e); and (2) "unfair or unconscionable means" to collect, or attempt to collect, a debt (*id.* § 1692f). *See Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407, 1410 (2017); *see also Bourff v. Rubin Lublin, LLC*, 674 F.3d 1238, 1241 (11th Cir. 2012). When a consumer's sophistication is pertinent, courts analyze alleged violations of these proscriptions under the "least sophisticated consumer" ("**LSC**") standard. *See LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1201 (11th Cir. 2010); *see also Landeros v. Pinnacle Recovery, Inc.*, 692 F. App'x 608, 613 (11th Cir. 2017) (noting that the LSC standard "will not apply to FDCPA claims in which the consumer's sophistication is irrelevant").

### III.  DISCUSSION

**A.  The 2015 Notice**

Because Green initiated this action in State Court on **June 6, 2016** (*see* Doc. 2), his claims must be limited to FDCPA violations that allegedly occurred on or after **June 6, 2015**. *See* 15 U.S.C. § 1692k(e). Green's claims are not so limited because he seeks relief based on the 2015 Notice, which SLS sent to Green via certified mail in **April 2015**. (*See* Doc. 21, pp. 15–17; *see also* Doc. 35 (conceding that the 2015 Notice "was sent by SLS

---

alleged violation was "done or omitted in good faith in conformity with any advisory opinion of the [Federal Trade] Commission'" (*see Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 578 (quoting 15 U.S.C. § 1692k(e)).

more than one year before Green filed suit").) Accordingly, the Court finds that Green's claims based on the 2015 Notice are barred by the FDCPA SOL and are due to be dismissed with prejudice. *See also Hampton-Muhamed*, 687 F. App'x at 893 (affirming dismissal of time-barred FDCPA claim); *Rivas*, 676 F. App'x at 930 (same); *Leahy-Fernandez v. Bayview Loan Servicing, LLC*, 159 F.Supp.3d 1294, 1303 (M.D. Fla. 2016).

B.    The 2017 Statement

To state a plausible FDCPA claim, Green must allege, "among other things," that "the challenged conduct is related to debt collection.'" *Cilien v. U.S. Bank Nat'l Assoc.*, 687 F. App'x 789, 792 (11th Cir. 2017) (quoting *Reese*, 678 F.3d at 1216). "When determining whether a communication is 'in connection with the collection of any debt,' [courts] look to the language of the communication in question—specifically the statements that demand payment and discuss additional fees if payment is not tendered." *Farquharson v. Citibank, N.A.*, 664 F. App'x 793, 801 (11th Cir. 2016).

SLS contends that the 2017 Statement is not "debt collection" as a matter of law because it is merely a periodic statement required under the Truth In Lending Act, 15 U.S.C. § 1601 ("**TILA Statement**"). (*See* Doc. 28.) Green concedes that a straightforward TILA Statement is *not* debt collection under the FDCPA. (*See* Doc. 35, p. 15.) Nonetheless, Green urges the Court to deny the MTD as to the 2017 Statement based on the following "important messages" section:

> **Important Messages**
>
> You are currently due for the 07/01/10 payment.
>
> \* **Partial Payments:** Any partial payments that you make are not applied to your mortgage, but instead are held in a suspense account. If you pay the balance of a partial payment, the funds will then be applied to your mortgage. However, if the loan is in foreclosure, unless funds are received pursuant to an agreed upon loss mitigation program, any additional funds received will be returned to you.
>
> ‡ **Amount to bring loan current:** Please note, if your account is past due, this amount may not include all fees or other amounts necessary to fully reinstate your loan. Please contact SLS at 1-800-306-6059 for a full reinstatement quote.

(*See* Doc. 21, p. 18.) Accordingly to Green, this confusing language supports FDCPA liability and "goes beyond the garden variety" TILA Statement. (*See id.*)

As a whole, the 2017 Statement does not add impermissible demands for payment not called for in a regular TILA Statement. *See Kelliher v. Target Nat'l Bank*, 826 F.Supp.2d 1324, 1328 (M.D. Fla. 2011). Accordingly, the Court finds that Green's claims based on the 2017 Statements are due to be dismissed with prejudice. *See Williams v. Bank of Am., N.A.*, No. 6:17-cv-103-Orl-31TBS, 2017 WL 3662441, at *5 (M.D. Fla. Aug. 24, 2017) (dismissing FDCPA claim based on TILA Statement); *Brown v. Select Portfolio Servicing, Inc.*, No. 16-62999-CIV-DIMTROULEAS, 2017 WL 1157253, at *3 (S.D. Fla. Mar. 24, 2017) (same); *see also Pinson v. Albertelli Law Partners LLC*, 618 F. App'x 551, 553 (11th Cir. 2015) (noting that fatal deficiency could not be cured by amendment where purported collection letter was an exhibit to the FDCPA complaint); *Antoine v. Carrington Mortg. Servs., LLC*, No. 0:17cv61216-WPD, 2017 WL 3404389, at *2 n.1 (S.D. Fla. Aug. 8, 2017) (same).

### C. The FC Case

The FC Complaint, which was filed in State Court on **June 30, 2015**, "declares the full amount payable under the [N]ote and [M]ortgage to be due," and alleges that Green "defaulted under the covenants, terms and agreements of the Note and Mortgage by failing to make the payment due **July 1, 2010**, and all subsequent payments." (*See* Doc. 21, p. 11.) The FC Complaint further alleges that:

> (a) **$176,448.41** "is due and owing on principal, plus interest from and after June 1, 2010, and the title search expenses for ascertaining necessary parties to this action" (*see id*); and
>
> (b) sums are "due and owing" for any amounts that may have been "advanced and paid" to protect the mortgagee's security interest, including "Ad Valorem Taxes, premiums on insurance required by the [M]ortgage, and other necessary costs" (*see id.* at 12).

Finally, the FC Complaint includes a request:

> [that the State Court] ascertain the amount due to [the mortgagee] for principal and interest on the Mortgage and Note and for late charges, abstracting, taxes, expenses and costs, including attorney's fees, plus interest thereon; that if the sums due [the mortgagee] under the Mortgage and Note are not paid immediately, the Court foreclose the Mortgage and the Clerk of the [State] Court sell the Property . . . to satisfy the . . . mortgage lien in accordance with the provisions of Florida Statutes §45.031 (2006); . . . and that the [State] Court retain jurisdiction of this action to make any and all further orders and judgments as may be necessary and proper, including the issuance of a writ of possession and the entry of a deficiency judgment decree, when and if such deficiency decree shall appear proper.

(*Id.* at 13–14.)

According to Green, SLS violated the FDCPA when it failed to disclose that the amounts demanded in the FC Complaint included "installments of principal, or payments for escrows, taxes, attorney's fees, or inspection fees," that were barred by the Fla. SOL. (*See* Doc. 21, ¶¶ 12, 16, 30, 26, 27, 35, 38.) Relying on *Bartram v. United States Bank National Association*, 211 So. 3d 1009 (Fla. 2016), SLS persuasively argues that this claim fails because the Fla. SOL does not reduce the amount that a mortgagee can recover in a foreclosure action that is brought within five years of the accrual date of the action. (*See* Doc. 28, pp. 8–9.)

Under Florida law, mortgage obligations are "unique."[4] *See Bartram*, 211 So. 3d at 1018. The life of the mortgage and the maturation date of the related note often spans thirty years, during which time the mortgagee's interest in the full amount of the loan is secured while the mortgagor makes scheduled periodic payments. *See Bollettieri Resort Villas Condo. Assoc., Inc. v. Bank of N.Y. Mellon*, No. SC16-1680, 2017 WL 4546114, at *2 (Fla. Oct. 12, 2017) (Lawson, J. concurring). If a periodic payment is missed, the lender or mortgagee is not required to sue for the missed payment. *See id*. Rather, each missed payment "creates a new cause of action" for the full amount owed, and the lender's right to bring that cause of action is non-waivable. *See Bartram*, 211 So. 3d at 1018 (citing *Star*

---

[4] In the context of the FDCPA, the U.S. Court of Appeals for the Eleventh Circuit also has highlighted the differences that exist between mortgages and promissory notes. *See Reese*, 678 F.3d at 1216. "A promissory note is a contract evidencing a debt and specifying terms under which one party will pay money to another." *Id*. A mortgage is "not a promise to pay a debt; it is an interest in [real property] that a lender can take if a debtor does not fulfill a payment obligation." *See id*.; *see also* Fla. Stat. § 697.01(1) (identifying documents deemed to be mortgages under Florida law); *id*. § 697.02 (clarifying that a mortgage is "a specific lien on the property therein described").

*Funding Sols., LLC v. Krondes*, 101 So. 3d 403 (Fla. 4th DCA 2012)). Under these circumstances, the Fla. SOL does not reduce the amount owed, it simply requires that lenders "bring suit for all amounts due" within five years of the date on which the cause of action accrues.[5] *See id.*; *see also Bollettieri*, 2017 WL 4546114, at *2; Fla. Stat. § 95.031(1); *id*. § 95.11(2); *id*. § 673.1181.

Here, Green promised to pay the lender or subsequent "**Note Holder**" the "**Principal**" amount of **$180,000.00**, plus "**Interest**" at an adjustable rate ("**Debt**") in return for funds to purchase his Florida residence ("**Property**"). (*See* Note, ¶1; *see also* Doc. 21, ¶¶5, 6, 9, 10.) The Mortgage created a lien on the Property in order to secure "repayment" of the Debt as well as "late charges due under the Note, and all sums due under [the Mortgage], plus interest" ("**Loan**"). (*See* Mortgage, DEFINITIONS, ¶(G) & TRANSFER OF RIGHTS IN THE PROPERTY.) The "**Maturity Date**" of the Note—which is the date Green agreed to pay the Loan in full—is **October 1, 2036**. (*See* Note, ¶3(A).)

Prior to the Maturity Date—specifically, on the first day of every month starting on **November 1, 2006** ("**Due Date**")—Green agreed to make payments to the Note Holder of Principal and Interest in an initial amount of **$1,179.47** ("**Periodic Payment**").[6]

---

[5] Depending on the terms of the parties' agreements, such actions may accrue "on the date an acceleration clause is invoked" or the date of the mortgagor's default. *See Bank of N.Y. Mellon for Nationstar Home Equity Trust 2007-A v. Pedersen*, No. 17-10113, 2017 WL 3668943, at *2 (11th Cir. Aug. 25, 2017); *see also Bartram*, 211 So. 3d at 1011.

[6] Depending on the applicable LIBOR rate, the Periodic Payment was set to change on the first day of **October 2008**, "and on that day every [six] month[s] thereafter" ("**Change Date**"). (*See* Note, ¶4.) The new Periodic Payment would be an amount "sufficient to repay the unpaid [P]rincipal that [Green is] expected to owe at the Change Date in full on the Maturity Date at [the] new interest rate in substantially equal payments." (*See id*.) The Note Holder is required to calculate and provide notice to Green

(*See* Note, ¶4; Mortgage, DEFINITIONS, ¶(O).) Failure to "pay the full amount of each" Periodic Payment on the Due Date is a "**Default**" under the Note (*see* Note, ¶7(B)), which triggers the Note Holder's non-waivable discretion to send "a written notice telling [Green] that if [he does] not pay the overdue amount by a certain date, the Note Holder may require [him] to pay immediately the full amount" of unpaid Principal and all Interest owed on that amount (*see id.* ¶¶7(C & D)). The Note Holder is required to "give Borrower notice of acceleration," and if Green fails to pay "all sums secured" by the Mortgage after receipt of such notice, then the Note Holder "may invoke any remedies permitted by [the Mortgage] without further notice or demand on [Green]." (*Id.* ¶11.)

These terms of the Note and Mortgage are consistent with the unique mortgage relationship discussed in the *Bartram* decision and the concurring opinion in *Bolletteiri*. During the life of the Mortgage and for the thirty-year term of the Note, Green obligated himself to pay the full amount of the Debt. He also agreed that the Note Holder would have a non-waivable right to accelerate the obligation if Green failed to make any Periodic Payment. By his own admission, Green failed to make Periodic Payments "in 2009, 2010, 2011, or at any time thereafter." (Doc. 21, ¶11.) Under these circumstances, the Fla. SOL did not reduce the amount Green owed. Accordingly, Green's contention that SLS violated the FDCPA by seeking time-barred payments fail as a matter of law.

### IV. CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

---

of the new Periodic Payment before each Change Date. (*See id.*)

(1) Defendant Specialized Loan Servicing, LLC's Motion to Dismiss Amended Complaint (Doc. 28) is **GRANTED**.

(2) The Amended Complaint (Doc. 21) is **DISMISSED WITH PREJUDICE**.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on November 29, 2017.

ROY B. DALTON JR.
United States District Judge

Copies to:

Counsel of Record